**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X   Case No.

EDDY A. WILLIAMS, JR.,

                       Plaintiff,                      **COMPLAINT**

       - against -

                                           **PLAINTIFF DEMANDS**
                                         **A TRIAL BY JURY**

NCSPLUS INCORPORATED,  CHRISTOPHER
REHKOW, *Individually*, and VICTOR LOYOLA,
*Individually*,

                       Defendants.
-----------------------------------------------------------------X

       Plaintiff EDDY A. WILLIAMS, JR. (hereinafter "Plaintiff" or "Plaintiff WILLIAMS"),

by his attorneys, PHILLIPS & ASSOCIATES, Attorneys at Law, PLLC, hereby complains of

Defendant NCSPLUS INCORPORATED (hereinafter "Defendant NCSPLUS"), Defendant

CHRISTOPHER REHKOW ("Defendant REHKOW"), and Defendant VICTOR LOYOLA,

("Defendant LOYOLA") upon personal knowledge, as well as upon information and belief, by

alleging and averring as follows:

## NATURE OF THE CASE

1.     Plaintiff brings this action alleging that Defendants have violated Title VII of the Civil

Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978

and by the Civil Rights Act of 1991, Pub. L. No. 102-166) ("Title VII"); the New York

State Human Rights Law, New York State Executive Law § 296, *et seq.* ("NYSHRL"); the

New York City Human Rights Law, New York City Administrative Code § 8-107(1), *et seq.*

("NYCHRL"); and New York State common law, and seeks damages to redress the injuries he has suffered as a result of being subjected to discrimination on the basis of his race (Black) and age (eighty-two), retaliation for complaining of race discrimination, and  assault motivated by bias against Plaintiff's age and race.

## JURISDICTION AND VENUE

2.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343, as this action arises under 42 U.S.C. § 2000e, *et seq.* and 42 U.S.C. § 1981.

3.      Jurisdiction in this Court is also proper under 28 U.S.C. § 1332(a)(3) as the matter in controversy exceeds the value of $75,000 and is between citizens of different states.

4.      This Court has supplemental jurisdiction over Plaintiff's claims brought under state law pursuant to 28 U.S.C. § 1367.

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) as one or more Defendants reside within the Southern District of New York and a substantial part of the events or omissions giving rise to the claim occurred therein.

## PROCEDURAL PREREQUISITES

6.      Plaintiff filed charges of discrimination upon which this Complaint is based with the Equal Employment Opportunity Commission ("EEOC").

7.      Plaintiff received a Notice of Right to Sue ("Notice") from the EEOC, dated November 7, 2022, with respect to the charges of discrimination contained herein. A copy of the Notice is annexed hereto as Exhibit A.

8.      This Action is being commenced within ninety (90) days of said Notice.

9.      Contemporaneously with the filing of this Complaint, Plaintiff mailed a copy of the Complaint to the New York City Commission on Human Rights ("NYCCHR") and the

Office of the Corporation Counsel of the City of New York ("Corporation Counsel")
pursuant to the notice requirements of Section 8-502 of the New York City Administrative
Code. A copy of the certificate of service of the complaint on the NYCCHR and the
Corporation Counsel is annexed hereto as Exhibit B.

## THE PARTIES

10.    At all times relevant hereto, Plaintiff WILLIAMS was and is a resident of the State of New
Jersey and County of Hudson.

11.    At all times relevant hereto, Defendant NCSPLUS was and is an active foreign business
corporation, operating in and existing under the laws of the State of Delaware.

12.    Defendant NCSPLUS owns and operates an office in New York, New York (hereinafter
the "New York City office") located at 117 East 24th Street, New York, New York 10010.

13.    At all times relevant hereto, upon information and belief, Defendant REHKOW was and is
an individual residing in the State of New York, as well as the President and Chief
Executive Officer ("CEO") of Defendant NCSPLUS. As such, he had the authority to hire,
terminate, and affect the terms and conditions of Plaintiff's employment or to otherwise
influence the decision-making regarding same.

14.    At all times relevant hereto, Defendant LOYOLA was and is an individual residing in the
State of New York as well as an Account Representative for Defendant NCSPLUS.

15.    Defendant NCSPLUS, Defendant REHKOW, and Defendant LOYOLA are sometimes
referred to collectively herein as "Defendants."

16.    Defendants are subject to all statutes upon which Plaintiff is proceeding herein.

17.    At all times relevant hereto, Defendant NCSPLUS was Plaintiff's employer under Title
VII.

18.     At all times relevant hereto, Defendant NCSPLUS was Plaintiff's employer under the NYSHRL.

19.     At all times relevant hereto, Defendant NCSPLUS was Plaintiff's employer under the NYCHRL.

## **MATERIAL FACTS**

20.     In or around late November 2021, Plaintiff WILLIAMS, who is African American, interviewed with Defendant REHKOW, who is White, for an Account Representative position at Defendant NCSPLUS' New York City office.

21.     Defendant REHKOW was impressed with Plaintiff WILLIAMS' experience in the debt collection field and advised Plaintiff that he would call Plaintiff shortly with more information about the position.

22.     On or around November 29, 2021, Defendant REHKOW spoke with Plaintiff WILLIAMS and offered him the position of Account Representative.

23.     As an Account Representative, Plaintiff WILLIAMS would initially be responsible for soliciting new business by cold-calling companies, maintaining contact with these potential new clients, and generating official leads from these calls.

24.     Defendant REHKOW explained that, generally, new Account Representatives would pass on these leads to another Account Representative, who was responsible for "closing" the deals and onboarding the new clients.

25.     Defendant REHKOW informed Plaintiff WILLIAMS that he would be paid $16.50 per hour as well as an initial 5% monthly commission on all fees collected from the referrals Plaintiff provided, which would increase to a 10% monthly commission once Plaintiff was

able to complete both the "initial contact" and "new client closing" stages of the collection process that would be initially split between two Representatives.

26.   Plaintiff WILLIAMS expressed to Defendant REHKOW that he was eager to begin receiving the 10% monthly commission because of his low base salary and asked if he could begin closing new client contracts on his own as soon as he completed his training.

27.   Defendant REHKOW did not answer Plaintiff WILLIAMS' question but stated they could discuss the matter further once Plaintiff completed his training phase.

28.   On or around December 6, 2021, Plaintiff WILLIAMS began his employment with Defendant NCSPLUS as an Account Representative.

29.   Plaintiff WILLIAMS' initial training assignment was to make "Phase 1" calls to at least one hundred debtors per day and give them NCSPLUS contact information to resolve their claims.

30.   Defendant REHKOW explained to Plaintiff WILLIAMS that this initial training assignment would help Plaintiff learn about Defendant NCSPLUS' collection process and become accustomed to Defendant NCSPLUS' computer system that required all calls be noted and logged properly.

31.   Plaintiff WILLIAMS quickly learned how to use Defendant NCSPLUS' computer system and was able to make the required number of calls to debtors each day.

32.   Soon after starting work at Defendant NCSPLUS, another Account Representative, Victor Loyola, who is Hispanic, entered Plaintiff WILLIAMS' office, approached him, and, without introducing himself, offensively asked Plaintiff, "How old are you?"

33.  Plaintiff WILLIAMS, who at the time was 82 years of age, was taken aback by his coworker's inappropriate question and responded, "Old enough to be hired by [Defendant REHKOW]."

34.  Defendant LOYOLA, without asking Plaintiff WILLIAMS his name, then pointed at Plaintiff and said, "I'm calling you Morgan Freeman."

35.  Plaintiff WILLIAMS, who was offended by Defendant LOYOLA's disrespectful nickname, responded tersely, "My name is Eddy."

36.  Defendant LOYOLA, unphased by Plaintiff WILLIAMS' clear discomfort, then stated, "Maybe you're Eddie Murphy."

37.  At this point, another employee, Neela, with whom Plaintiff WILLIAMS shared an office, interrupted Defendant LOYOLA's offensive rant, stating that it was rude to speak to Plaintiff in this manner.

38.  When Defendant LOYOLA did not acknowledge Neela's statement, Plaintiff WILLIAMS, who was shocked at Defendant LOYOLA's blatant race-based stereotyping, responded, "My name is Eddy Williams."

39.  Defendant LOYOLA did not acknowledge Plaintiff WILLIAMS' statement and walked away.

40.  Thereafter, Defendant LOYOLA would only refer to Plaintiff WILLIAMS as "Morgan," short for Morgan Freeman, and would say "hey Morgan" on a continuous and ongoing basis whenever he passed by Plaintiff in the office.

41.  Plaintiff WILLIAMS continued to be horrified that he was being subjected to race-based profiling so openly in the workplace and would regularly correct Defendant LOYOLA by stating his actual name.

42. When Plaintiff WILLIAMS reminded Defendant LOYOLA that his first name was Eddy, not Morgan, Defendant LOYOLA would respond mockingly, "Okay, I'll switch off and call you Eddie Murphy instead of Morgan sometimes."

43. Then, on or around the beginning of Plaintiff WILLIAMS' second week of work, Defendant REHKOW told Plaintiff he had been promoted to his official job duties, which were marketing and sales calls. Defendant REHKOW instructed Plaintiff to make between sixty to one hundred calls each day to various businesses nationwide to inform them about Defendant NCSPLUS' debt collection business and assess whether these businesses were receptive to beginning a relationship with Defendant NCSPLUS.

44. Plaintiff WILLIAMS was to log all conversations in Defendant NCSPLUS' computer system to ensure that Plaintiff's progress with each business could be tracked.

45. Defendant REHKOW did not give Plaintiff WILLIAMS any further instruction and did not discuss with Plaintiff whether he would be completing the "closing" conversations with clients as well or passing off any leads that he generated to another Account Representative.

46. Plaintiff WILLIAMS asked his coworker, William Steep, who had been an Account Representative since approximately March 2021, for guidance on proper procedures.

47. Mr. Steep advised Plaintiff WILLIAMS to initiate a "first call" with each business to introduce Defendant NCSPLUS' debt collection services and ask for the name of the business' principal representative who would be responsible for making decisions about whether Defendant NCSPLUS' services would be needed.

48. Mr. Steep further advised Plaintiff WILLIAMS to then email the business' representative information about Defendant NCSPLUS' services and invite the representative to have an additional conversation about signing up for these services.

49.   After that, Mr. Steep explained that Plaintiff WILLIAMS should call the business again eight business days following the initial contact to speak with the business's principal representative directly and ask five "Qualifying Questions" regarding the business's specific debt collection needs.

50.   Mr. Steep advised Plaintiff WILLIAMS to record all of these "Qualifying Questions" on a "Lead Referral" worksheet, which would then indicate that the business was a "qualified lead" with the potential to enter into a contract with Defendant NCSPLUS.

51.   If the business did not respond to the call eight business days after the initial contact, Plaintiff WILLIAMS was to call the business again sixteen business days after that. If the business again did not respond, Plaintiff was instructed to call once more after an additional twenty business days. If the business did not respond a third time, then the business was considered a "no-sale" to be dropped from the call list.

52.   Mr. Steep did not tell Plaintiff WILLIAMS about any "closing" conversations after the "qualifying leads" were generated, as it took, at minimum, eight business days from the initial contact call for a "qualified lead" to be generated, so Plaintiff was primarily focused on conducting the initial conversations in the volume required by Defendant NCSPLUS.

53.   Further, Defendant LOYOLA did not approach Plaintiff WILLIAMS at any time to ask for leads to be transferred to him or engage in any conversations with Plaintiff regarding the procedure once Plaintiff had generated a qualified lead.

54.   Defendant REHKOW praised Plaintiff WILLIAMS' performance, once Plaintiff began making these marketing and sales calls and did not provide any additional training or guidance to Plaintiff.

55.    On or around December 16 or 17, 2021, Plaintiff WILLIAMS attended the Defendant NCSPLUS Christmas party at the Defendant NCSPLUS New York City office.

56.    At the party, Defendant LOYOLA approached Plaintiff WILLIAMS and again began to call Plaintiff Morgan, rather than Plaintiff's actual first name, Eddy.

57.    Plaintiff WILLIAMS, fed up with Defendant LOYOLA's continued racist behavior, told Defendant LOYOLA to "cut it out," "stop profiling" Plaintiff, and call Plaintiff by his actual name.

58.    Defendant LOYOLA began laughing at Plaintiff WILLIAMS and then walked away.

59.    Thereafter, Defendant LOYOLA continued to call Plaintiff WILLIAMS "Morgan" on a continuous and ongoing basis for the entirety of Plaintiff's employment with Defendant NCSPLUS, despite Plaintiff continuing to insist on Defendant LOYOLA calling Plaintiff by his name.

60.    Defendant REHKOW went on vacation for the final two weeks of 2021 and returned to work on or around January 4, 2022.

61.    During the two weeks when Defendant REHKOW was on vacation, Plaintiff WILLIAMS continued to cold-call businesses at the appropriate speed and was performing his job duties satisfactorily.

62.    By the end of 2021, Plaintiff WILLIAMS had called over 1,000 businesses for Defendant NCSPLUS and had generated over 300 business names that were ready for a second call, within the appropriate time frame, to determine whether they were qualifying leads.

63.    Plaintiff WILLIAMS had also properly logged the status of each of these conversations in the Defendant NCSPLUS computer system, so his progress with each of these businesses was noted and available for review.

64. Mr. Steep explained to Plaintiff WILLIAMS that, since most businesses were out of the office due to the Christmas and New Year's holidays, this was a particularly slow time for Defendant NCSPLUS.

65. Additionally, since this was the end of the year, most of the second calls were not to be made until the beginning of 2022 based on the call schedule given to Plaintiff WILLIAMS by Mr. Steep.

66. Mr. Steep told Plaintiff WILLIAMS that, in the weeks leading up to the end of 2021, he had only generated one qualified lead for Defendant NCSPLUS, and that this volume was typical due to the nature of Defendant NCSPLUS' business.

67. In the beginning of January 2022, Plaintiff WILLIAMS began to call back the approximately 300 businesses with whom he had made contact in the prior two weeks, as well as call new businesses at the required volume.

68. Plaintiff WILLIAMS was not able to make contact with primary representatives for any of the businesses on his call back list in the first week of 2022, despite contacting them in compliance with the call back procedure outlined by Mr. Steep, so none were considered to be qualified leads.

69. Nevertheless, Plaintiff WILLIAMS continued to call new businesses and attempt to contact the businesses who were due for a second call.

70. Upon Defendant REHKOW's return to the office on or around January 4, 2022, Defendant REHKOW did not provide Plaintiff WILLIAMS with any additional instruction on his job duties and did not at any time inquire about the status of any leads Plaintiff had generated.

71. Then, on or around January 6, Defendant LOYOLA aggressively approached Plaintiff WILLIAMS' desk and asked loudly, "Do you have my leads?"

72.   Plaintiff WILLIAMS, who was deeply confused because he had never been instructed to
      provide any leads to Defendant LOYOLA, was concerned by Defendant LOYOLA's
      sudden demand.

73.   However, Plaintiff WILLIAMS felt it necessary to provide a response due to Defendant
      LOYOLA's threatening demeanor, so he responded that he had only started making his
      second calls on January 3, so he did not yet have any qualified leads.

74.   Defendant LOYOLA then screamed, "I want leads now" at Plaintiff WILLIAMS and
      walked out of Plaintiff's office.

75.   Within a few minutes of Defendant LOYOLA walking out of Plaintiff WILLIAMS' office,
      Defendant REHKOW called out for Plaintiff to go to Defendant REHKOW's office.

76.   When Plaintiff WILLIAMS entered Defendant REHKOW's office, he saw that Defendant
      LOYOLA was also present.

77.   Defendant REHKOW asked Plaintiff WILLIAMS if he "had any leads for [Defendant
      LOYOLA]" and Plaintiff WILLIAMS responded that he was just beginning to make his
      second calls, so he did not have any qualified leads at that time.

78.   Plaintiff WILLIAMS continued that he intended to discuss the "closing" procedure with
      Defendant REHKOW once Plaintiff developed any qualified leads, as he had not yet been
      informed by Defendant REHKOW or anyone else whether Plaintiff would turn the
      qualified leads over to Defendant LOYOLA or have the closing conversations on his own,
      pursuant to their prior conversation at Plaintiff's interview.

79.   Immediately after Plaintiff WILLIAMS finished speaking, Defendant LOYOLA became
      incredibly agitated, stood face-to-face with Plaintiff, and began shouting that he would

"kick [Plaintiff's] motherfucking ass if [Plaintiff] did not give [Defendant LOYOLA] leads."

80.   Plaintiff WILLIAMS was startled by Defendant LOYOLA's violent response and attempted to retreat to his own office, but Defendant LOYOLA blocked Plaintiff from leaving.

81.   With his hands balled into fists, Defendant LOYOLA continued his tirade by yelling, "Motherfucker I will take you down, I don't care how old you are. You guys are trouble, don't fuck with me."

82.   In addition to being scared by Defendant LOYOLA's aggressive escalation, Plaintiff WILLIAMS was deeply offended by both Defendant LOYOLA's reference to Plaintiff's age and his statement, "you guys are trouble," which Plaintiff believed to be a disparaging remark about his race.

83.   Plaintiff WILLIAMS believed that Defendant LOYOLA was attempting to intimidate him due to Plaintiff's age and race.

84.   At this point, the disturbance was so loud that Defendant NCSPLUS' receptionist, who was stationed away from Defendant REHKOW's office at the front of the main office, walked back into Defendant REHKOW's office to ask Defendant LOYOLA to "calm down."

85.   Shockingly, as Defendant LOYOLA violently threatened Plaintiff WILLIAMS with physical violence and made discriminatory comments, Defendant REHKOW stood by quietly without attempting to defuse the situation or remove Defendant LOYOLA from the office.

86.   Defendant LOYOLA did not stop shouting and continued to yell, "If we go downstairs, I will take you out motherfucker."

87.   Plaintiff WILLIAMS, who was terrified for his own physical safety and confused that Defendant REHKOW was providing him with no protection or support, attempted to diffuse the situation by stating that he had the names of three businesses who, although they were not at that time qualified leads and had not been asked the five "qualifying questions," Plaintiff felt were especially strong first conversations, and that he would pass the names of these businesses to Defendant LOYOLA if he wanted to take them over.

88.   At that time, Defendant REHKOW walked with Defendant LOYOLA to another closed office in the back of the Defendant NCSPLUS office space, which allowed Plaintiff WILLIAMS to return to his own office and photocopy the information of the three businesses he mentioned.

89.   Plaintiff WILLIAMS then brought these photocopies back to the office where Defendant REHKOW and Defendant LOYOLA were located and gave them to Defendant REHKOW.

90.   Upon entering the office, Plaintiff WILLIAMS complained to Defendant REHKOW that Defendant LOYOLA had been attempting to intimidate Plaintiff since Plaintiff had begun working for Defendant NCSPLUS and that he felt Defendant LOYOLA's behavior, including the violent outburst that Defendant REHKOW had just witnessed, was motivated by racial animus.

91.   Defendant REHKOW asked Plaintiff WILLIAMS what Defendant LOYOLA had been saying to Plaintiff, and Plaintiff explained that Defendant LOYOLA had been consistently profiling Plaintiff by calling him either Morgan Freeman or Eddie Murphy rather than his actual name, despite Plaintiff's repeated corrections and his complaint to Defendant LOYOLA that he felt profiled by the behavior.

92.  Defendant REHKOW stated coldly, "Oh, that's not racist" and dismissed Plaintiff WILLIAMS' concerns.

93.  Plaintiff WILLIAMS then told Defendant REHKOW that he had "been around long enough to know that if someone is profiling [him] then they aren't giving [him] a fair shot or treating [him] fairly."

94.  Plaintiff WILLIAMS continued to state that Defendant REHKOW was not present when Defendant LOYOLA made these statements, so it was not right for Defendant REHKOW to be so dismissive to Plaintiff's assessment of what Defendant LOYOLA had said to Plaintiff.

95.  Without responding to Plaintiff WILLIAMS' continued complaint of discrimination, Defendant REHKOW then requested that Plaintiff leave the room.

96.  Plaintiff WILLIAMS returned to his desk, stunned that Defendant REHKOW would condone Defendant LOYOLA's discriminatory behavior and refuse to act on Plaintiff's good faith complaint of race discrimination.

97.  Within minutes, Defendant REHKOW then suddenly approached Plaintiff WILLIAMS and informed Plaintiff that he was terminated and instructed him to clean out his desk.

98.  Plaintiff WILLIAMS was shocked at the abrupt and unwarranted termination of his employment but was so exhausted by the preceding events and concerned for his physical safety around Defendant LOYOLA that he left the Defendant NCSPLUS office without further discussion.

99.  When Plaintiff WILLIAMS reached the lobby of Defendant NCSPLUS' office building, he walked past Lynn Goldberg, the Executive Vice President of Defendant NCSPLUS, and informed Mr. Goldberg of the termination of his employment.

100. Mr. Goldberg was shocked by the news and informed Plaintiff WILLIAMS that he was not aware of any prior plan to terminate Plaintiff's employment.

101. Based on the temporal proximity between Plaintiff WILLIAMS' complaint about Defendant LOYOLA's discrimination and the termination of Plaintiff's employment, it is clear that Plaintiff was fired in retaliation for making a good faith complaint of race discrimination.

102. Plaintiff WILLIAMS was unlawfully discriminated and retaliated against, humiliated, and degraded.

103. As a result of the acts and conduct complained of herein, Plaintiff WILLIAMS suffered a loss of income, the loss of a salary, bonus, benefits, and other compensation which such employment entails.

104. As a result of the acts and conduct complained of herein, Plaintiff WILLIAMS also experienced severe emotional and physical distress.

105. Defendant's actions and conduct were intentional and intended to harm Plaintiff WILLIAMS.

106. As a result of the above, Plaintiff WILLIAMS has been damaged in an amount which exceeds the jurisdiction limits of the Court.

107. Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law. As such, Plaintiff WILLIAMS demands punitive damages against all Defendants.

**FIRST CAUSE OF ACTION**
**RETALIATION UNDER TITLE VII**
**(Against Defendant NCSPLUS)**

108.    Plaintiff WILLIAMS repeats and realleges each and every allegation made in the above

paragraphs of this complaint as if set forth herein at length.

109.    Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) provides:

> It shall be an unlawful employment practice for an employer to
> discriminate against any of his employees or applicants for
> employment . . . because he has opposed any practice made an
> unlawful employment practice by this subchapter, or because he has
> made a charge, testified, assisted or participated in any manner in an
> investigation, proceeding, or hearing under this subchapter.

110.    Defendant NCSPLUS violated the sections cited herein as set forth through, among other

things, unlawfully terminating Plaintiff as a result of his good faith complaints of

discrimination.

111.    Accordingly, as a result of the unlawful conduct of Defendant NCSPLUS, Plaintiff has

been damaged as set forth herein and is entitled to the maximum compensation available

to him under this statute.

**SECOND CAUSE OF ACTION**
**DISCRIMINATION UNDER THE NYSHRL**
**(Against All Defendants)**

116.    Plaintiff WILLIAMS repeats, reiterates and realleges each and every allegation made in

the above paragraphs of this Complaint as if set forth herein at length.

117.    Executive Law § 296 provides that:

> It shall be an unlawful discriminatory practice: "(a) For an employer
> or licensing agency, because of an individual's **age**, **race**, creed,
> color, national origin, sexual orientation, military status, sex,
> disability, predisposing genetic characteristics, marital status, or
> domestic violence victim status, to refuse to hire or employ or to bar
> or to discharge from employment such individual or to discriminate

against such individual in compensation or in terms, conditions or privileges of employment."

118. Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of his race and age.

119. Accordingly, as a result of the unlawful conduct of Defendants, Plaintiff has been damaged as set forth herein and is entitled to the maximum compensation available to him under this statute.

## THIRD CAUSE OF ACTION
## RETALIATION UNDER THE NYSHRL
## (Against Defendants NCSPLUS and REHKOW)

120. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if set forth herein at length.

121. New York State Executive Law § 296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

122. Defendants violated the section cited herein as set forth.

123. Accordingly, as a result of Defendants' unlawful conduct, Plaintiff has been damaged as set forth herein and is entitled to the maximum compensation available to him under this statute.

## FOURTH CAUSE OF ACTION
## DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
## (Against All Defendants)

124. Plaintiff WILLIAMS repeats and realleges each and every allegation made in the above paragraphs of this complaint as if set forth herein at length.

125. The New York City Administrative Code § 8-107(1) provides that:

It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived **age, race**, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

126. Defendants engaged in an unlawful discriminatory practice in violation of the New York City Administrative Code § 8-107(1)(a) by creating and maintaining discriminatory working conditions and otherwise discriminating against Plaintiff because of his race and age.

127. Accordingly, as a result of the Defendants' unlawful conduct, Plaintiff has been damaged as set forth herein and is entitled to the maximum compensation available to him under this statute.

## FIFTH CAUSE OF ACTION
## DISCRIMINATION UNDER THE NEW YORK STATE EXECUTIVE LAW
### (Against Defendants REHKOW and LOYOLA)

128. Plaintiff WILLIAMS repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if set forth herein at length.

129. New York State Executive Law § 296(6) provides that it shall be an unlawful discriminatory practice "For any person to aid, abet, incite, compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

130. Defendants REHKOW and LOYOLA violated this statute as set forth.

131. Accordingly,. as a result of Defendants REHKOW and LOYOLA's unlawful conduct, Plaintiff has been damaged as set forth herein and is entitled to the maximum compensation available to him under this statute.

## SIXTH CAUSE OF ACTION
## DISCRIMINATION UNDER THE NYCHRL
### (Against All Defendants)

135.   Plaintiff WILLIAMS repeats and realleges each and every allegation made in the above

paragraphs of this complaint as if same were set forth herein fully at length.

136.   The New York City Administrative Code § 8-107(1) provides that:

> It shall be an unlawful discriminatory practice: (a) For an employer
> or an employee or agent thereof, because of the actual or perceived
> **age**, **race**, creed, color, national origin, gender, disability, marital
> status, sexual orientation or alienage or citizenship status of any
> person, to refuse to hire or employ or to bar or to discharge from
> employment such person or to discriminate against such person in
> compensation or in terms, conditions or privileges of employment.

137.   Defendants engaged in an unlawful discriminatory practice in violation of the New York

City Administrative Code § 8-107(1)(a) by creating and maintaining discriminatory

working conditions, and otherwise discriminating against Plaintiff because of his race and

age.

138.   Accordingly, as a result of the unlawful conduct of Defendants, Plaintiff has been damaged

as set forth herein and is entitled to the maximum compensation available to him under this

statute.

## SEVENTH CAUSE OF ACTION
## RETALIATION UNDER THE NYCHRL
### (Against Defendants NCSPLUS and REHKOW)

139.   Plaintiff WILLIAMS repeats and realleges each and every allegation made in the above

paragraphs of this complaint as if set forth herein at length.

140.   The Administrative Code of the City of New York § 8-107(7) provides that it shall be an

unlawful discriminatory practice:

"for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter, (ii) filed a complaint, testified or assisted in any proceeding under this chapter, (iii) commenced a civil action alleging the commission of an act which would be an unlawful discriminatory practice under this chapter, (iv) assisted the commission or the corporation counsel in an investigation commenced pursuant to this title, (v) requested a reasonable accommodation under this chapter, or ([v]vi) provided any information to the commission pursuant to the terms of a conciliation agreement made pursuant to section 8-115 of this chapter."

141. Defendants violated the section cited herein as set forth.

142. Accordingly, as a result of Defendants' unlawful conduct, Plaintiff has been damaged as set forth herein and is entitled to the maximum compensation available to him under this statute.

## EIGHTH CAUSE OF ACTION
## DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
### (Against Defendants REHKOW and LOYOLA)

147. Plaintiff WILLIAMS repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if set forth herein at length.

148. The New York City Administrative Code § 8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

149. Defendants REHKOW and LOYOLA violated this statute as set forth.

150. Accordingly, as a result of Defendant REHKOW and LOYOLA's unlawful conduct, Plaintiff has been damaged as set forth herein and is entitled to the maximum compensation available to him under this statute.

## NINTH CAUSE OF ACTION
## DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
## (Against Defendant NCSPLUS)

151.   Plaintiff WILLIAMS repeats and realleges each and every allegation made in the above

paragraphs of this complaint as if set forth herein at length.

152.   The Administrative Code of the City of New York § 8-107(13) provides for employer

liability for discriminatory conduct by an employee, agent or independent contractor. This sub-

section states:

> a. An employer shall be liable for an unlawful discriminatory practice based upon the
> conduct of an employee or agent which is in violation of any provision of this section
> other than subdivisions one and two of this section.
> b. An employer shall be liable for an unlawful discriminatory practice based upon the
> conduct of an employee or agent which is in violation of subdivision one or two of this
> section only where:
>
> > 1. the employee or agent exercised managerial or supervisory responsibility; or
> > 2. the employer knew of the employee's or agent's discriminatory conduct, and
> > acquiesced in such conduct or failed to take immediate and appropriate corrective
> > action; an employer shall be deemed to have knowledge of an employee's or agent's
> > discriminatory conduct where that conduct was known by another employee or
> > agent who exercised managerial or supervisory responsibility; or
> > 3. the employer should have known of the employee's or agent's discriminatory
> > conduct and failed to exercise reasonable diligence to prevent such discriminatory
> > conduct.
>
> c. An employer shall be liable for an unlawful discriminatory practice committed by a
> person employed as an independent contractor, other than an agent of such employer, to
> carry out work in furtherance of the employer's business enterprise only where such
> discriminatory conduct was committed in the course of such employment and the
> employer had actual knowledge of and acquiesced in such conduct.

153.   Defendant violated the section cited herein as set forth.

154.   Accordingly, as a result of Defendant's unlawful conduct, Plaintiff has been damaged as

set forth herein and is entitled to the maximum compensation available to him under this statute.

## TENTH CAUSE OF ACTION
## ASSAULT
## (Against Defendant LOYOLA)

151.    Plaintiff WILLIAMS repeats and realleges each and every allegation made in the above

paragraphs of this Complaint as if set forth herein at length.

152.    Defendant LOYOLA acted with the intent to cause a harmful and offensive physical

contact with Plaintiff.

153.    Plaintiff was put in immediate apprehension and fear of harmful and offensive physical

contact with Defendant LOYOLA as a result of his actions.

154.    Defendant LOYOLA is liable in damages to Plaintiff for all injuries proximately caused

by his actions which put Plaintiff in immediate apprehension and fear of offensive physical

contact.

155.    As a result of Defendant LOYOLA's conduct, Plaintiff has suffered and continues to suffer

damages as set forth herein and is entitled to the maximum compensation available to him

under the common law.

## JURY DEMAND

156.    Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE,** Plaintiff respectfully requests a judgment against the Defendant:

A.    Declaring that Defendants engaged in, and enjoining Defendants from continuing to

engage in, unlawful employment practices prohibited by Title VII of the Civil Rights Act

of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the

Civil Rights Act of 1991, Pub. L. No. 102-166); the New York State Human Rights Law,

New York State Executive Law § 296, *et seq.*; the New York City Human Rights Law,

New York City Administrative Code § 8-107(1), *et seq.*, and New York State common law,

in that Plaintiff was subjected to discrimination on the basis of his race and age, retaliated against for complaining of race discrimination, and subjected to assault;

B.   Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendants' unlawful discrimination, retaliation, and assault and to otherwise make him whole for any losses suffered as a result of such unlawful employment practices;

C.   Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to his reputation in an amount to be proven;

D.   Awarding Plaintiff punitive damages;

E.   Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action, and;

F.   Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy Defendant's unlawful employment practices.

Dated: New York, New York
       November 8 , 2022

PHILLIPS & ASSOCIATES,
ATTORNEYS AT LAW, PLLC

By:   _____
      Dorina Cela, Esq.
      *Attorneys for Plaintiff*
      45 Broadway, Suite 430
      New York, New York 10006
      (212) 248-7431
      dcela@tpglaws.com